White, J. (dissenting.)
Abstractly considered, the act of cutting a fire hose is not tortious or negligent. It may become so when considered in connection with some other fact; such as that it was cut by a stranger and without or against the will of the owner; or, as is charged in this case, that the cutting of it deprived some person of a benefit or advantage, of a value appreciable in money, which he was then lawfully enjoying from its use.
Cutting or destroying fire hose, provided for use by a com- • munity, when no fire existed, and the hose was not in actual use at the time of the cutting, would not give a member of that community, whose house should afterwards be burned down, a right of action for damages caused by the destruction of his house, although it might be ever so probable or clear that if the hose had not been cut, its use would have enabled the owner of the house to extinguish the fire and save his property. The damages would in that case be too remote; that is, they would be so remote that other acts or negligences intervening might be chargeable, to some extent, with the disaster ; and courts will not speculate in such cases, in order to determine whether any, or how much, of the damage is due to a particular act complained of.
*595 But in the present instance, the hose was actually conveying water upon the plaintiffs’ burning building, and rapidly extinguishing the fire, when it was cut. The plaintiff was instantly deprived by this act of the flow of water upon his house, and the flames that had been going out under the action of the hose, immediately rose and destroyed that and other property owned by him. It would be difficult to state a case of more direct or immediate damage resulting from a specific act: Injuries, for example, sustained by being thrown from a wagon in consequence of the wheel being knocked off by coming in contact with an obstruction negligently left in the carriage way, would seem to be a more remote damage than the one under consideration ; and yet such an injury has never been regarded as too remote to permit the maintenance of an action for damages caused by it.
That the hose was the property of the fire department can1' not affect the question. The plaintiff was in the enjoyment of the use of the hose by the will and authority of the depart-. ment; and the defendants had no more right to deprive him i of that use than if he were the absolute owner of the hose. But besides this, the fire department is a municipal organization to the'services of which every citizen is-entitled, notwithstanding that the members of the department give their services voluntarily. They are vested with many privileges in consideration of the labors and risks they undergo, and their services, so long as they continue members of the department, are matters of duty and obligation, and not naked gratuities. No fireman could destroy, or take up and carry away a hose while it was actually playing upon a burning building, without subjecting himself to civil and perhaps criminal proceedings, if it should appear that the building was destroyed in consequence of his act.
The learned judge, on the trial, disregarded the objection, that the damages alleged to' have been caused by the defendants were too remote, and I refer to the point thus particularly only because the case has been already twice before the *596 court upon appeal, and upon each occasion the objection was, to some extent, discussed, but not decided. . .
On the question of negligence, I think the learned justice who tried the cause, erred" in- directing the jury to find a verdict for .the defendants. There was testimony that the engineer of the train could plainly see the location of the fire at or about Fifteenth street, a distance of half a mile ; that ah Fifty-ninth street, more than one thousand feet from the loca-* tion of the hóse, he was called to, and saw and heard a fireman shouting to him to stop ; that the train was then almost instantly, by - a reversal of the engine, brought down from a speed of-eighteen or twenty miles to a rate of about four or five miles an hour; that there was a crowd, or number of firemen all along the track in front of the' locomotive ; but that, instead of stopping the train altogether, as some, if not all, of the testimony shows that he might have done before it had reached the hose, he ran' it along the residue of the way smoothly at that rate of four or five "miles an hour until he cut the hose. \
There is no -testimony in the case that does not show that the train could have been stopped on that up grade inside of eight hundred feet; there is. testimony that it could have been stopped within two hundred or three hundred feet; • and there is testimony, as I have already observed, that the engineer was'warned to stop, considerably more than eight hundred feet north' of the hose that was destroyed. The evidence in the case would justify the jury in believing, if so disposed,that the engineer did not, at the time, think it necessary to stop the train absolutely; but that .after reversing the engine, to use a railroad word, he only slowed the train, putting it at a low rate of speed, and expecting to stop if any obstruction appeared, before any damage could be done. In this he was mistaken; and if. the jury should conclude that he acted as is here supposed, the defendants should bear the consequences of his error. With respect to the proof that was given-of what the servants of the- defendants saw, or did not.see of the impending' danger, I will remark, that it is not the fact, *597 that a "defendant or his servants -mistook, or misapprehended or failed altogether to see certain' appearances or objects, that can excuse him. The true inquiry is, was there any thing that he might have seen, or heard, that would have been sufficient to notify and put him upon his guard against a. near danger ? In cases of this character an engineer or conductor entrusted with so much dangerous power, should be held to the strictest rules in its use and management; and when warned of danger ahead, he should be required to stop his train altogether, and ascertain the nature of the' difficulty in his way.
The questions are fairly presented in- this case.
1st. Were the defendants’ servants notified that there was danger in proceeding further ? and
2d. Could they, after such notice, have stopped the train-before reaching the fire hose P
If the jury should find affirmatively upon these questions, and render a verdict for the plaintiff, I do hot believe it could be set aside as against evidence.
I think the corporation ordinance limiting the speed of travel on the streets of the city was properly excluded. The track of the railroad at that point was not at that time one of the streets of the city regulated and thrown open, for public use as a street.
So also there was no error in admitting the deed offered by the defendants. It might have been important for them to show that they were not trespassers in running their cars upon that track. But proof of the defendants’ ownership of the track or way where the hose crossed it, would not affect the plaintiff’s right to recover, if otherwise entitled. The right tot temporarily interrupt travel by running fire hose, when necessary for subduing a fire, across a street or public way - in the city of Kew York, is one that can not he questioned. To deny its existence would be often equivalent to giving over the city to a general conflagration ; and for a private road or street interposed between a hydrant, or other supply of water, and a fire, no greater exemption can be claimed.
*598 In my opinion, upon the ground that there was sufficient testimony in the case to require that it should be submitted to, and passed upon by the jury, a new trial should he ordered, with costs to abide the event.
Hew trial denied.